UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NATIONAL FUEL GAS COMPANY, and
NATIONAL FUEL GAS DISTRIBUTION
 CORPORATION,

                                Plaintiffs,
      v.

U.S. ENERGY SAVINGS CORPORATION,

                                Defendant.

**DECISION
and
ORDER**

**07-CV-440A(F)**

_____

APPEARANCES:         HARTER, SECREST and EMERY LLP
                           Attorneys for Plaintiffs
                           KENNETH W. AFRICANO, of Counsel
                           Twelve Fountain Plaza
                           Suite 400
                           Buffalo, New York 14202-2293

                           KAVINOKY & COOK, LLP
                           Attorneys for Defendant
                           ELISHA J. BURKHART, of Counsel
                           726 Exchange Street
                           Suite 800
                           Buffalo, New York 14210

                           LOWIS & GELLEN LLP
                           Attorneys for Defendant
                           ROBERT H. SMELTZER,
                           ETHAN F. HAYWARD, and
                           MARTIN W. McMANAMAN, of Counsel
                           200 W. Adams Street
                           Suite 1900
                           Chicago, Illinois 60606

## JURISDICTION

     This action was referred to the undersigned by Honorable Richard J. Arcara on

November 21, 2007, for all pretrial matters. The matter is presently before the

undersigned on Defendant's motion to change venue (Doc. No. 21), filed February 22,

2008.

## **BACKGROUND and FACTS**[1]

Plaintiffs National Fuel Gas Company ("National Fuel"), and National Fuel Gas Distribution Corporation ("National Fuel Distribution") (together, "Plaintiffs"), commenced this action on July 5, 2007, alleging trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*., as well as pendent state claims for trademark infringement, unfair competition, injury to business reputation, and false advertising under New York law.  National Fuel is engaged in the business of natural gas storage, transmission, sales, production and distribution, and holds the registered service mark "National Fuel" (registration # 3019335) ("the mark"), through the United States Patent and Trademark Office.  National Fuel Distribution, a subsidiary of National Fuel, a licensed public utility for the distribution and sale of natural gas, has delivered natural gas and services to more than 700,000 customers in western New York and northwestern Pennsylvania for more than thirty years.

Plaintiffs allege Defendant U.S. Energy Savings Corporation ("U.S. Energy" or "Defendant"), exploited National Fuel's goodwill and infringed on National Fuel's trademark by unlawfully using National Fuel's service mark to lure National Fuel Distribution customers into applying for Defendant's services using unfair competition practices.  Specifically, Plaintiffs claim that Defendant and its sales representatives engaged in deceptive door-to-door sales practices and canvassing tactics in

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

Cheektowaga, a suburban township, and in downtown Buffalo in front of National Fuel's offices, including wearing clothing bearing National Fuel's mark, and using National Fuel's name to elicit information from National Fuel Distribution customers so as to deceptively register National Fuel's customers for Defendant's long-term fixed-price natural gas supply programs.  Plaintiffs maintain they first learned of Defendant's alleged unlawful practices in the Spring of 2007 when National Fuel Distribution began receiving numerous complaints from National Fuel Distribution customers that Defendant's representatives were claiming either to be National Fuel Distribution employees, or were in some way affiliated with National Gas Distribution.  Plaintiffs maintain Defendant's alleged deceptive solicitation tactics have caused confusion among National Fuel Distribution customers, and serious and irreparable harm to Plaintiffs.

Defendant's answer (Doc. No. 4), was filed November 19, 2007.[2]  On February 22, 2008, Defendant filed the instant motion (Doc. No. 21) ("Defendant's motion"), seeking to change venue from the Western District of New York - Buffalo Division, to the Western District of New York - Rochester Division, and New York Energy Savings Corp.'s Memorandum of Law in Support of Its Motion to Transfer Venue (Doc. No. 23) ("Defendant's Original Memorandum"), attached to which are Exhibits A through C ("Defendant's Exh(s). __").  On March 7, 2008, Defendant filed a motion (Doc. No. 31) ("Motion for Leave to File"), seeking leave to file an amended memorandum of law in

---

[2] On March 6, 2008, Defendant filed a counterclaim against National Fuel Gas Distribution (Doc. No. 28).  Because the instant motion has no bearing on such counterclaim, the counterclaim is not further discussed.

support of Defendant's motion, along with the proposed New York Energy Savings Corp.'s Corrected Memorandum of Law in Support of Its Motion to Transfer Venue (Doc. No. 32) ("Defendant's Corrected Memorandum").  According to Defendant, the proposed amendments corrected only "a minor misstatement concerning U.S. Energy's principal place of business as well as a few minor typos," but contained no substantive changes, nor any new factual allegations or arguments.[3]  Motion for Leave to File, ¶¶ 1-2.  By Text Order entered March 11, 2008 (Doc. No. 33), the undersigned granted Defendant's Motion for Leave to File.

In opposition to Defendant's motion, Plaintiffs filed on March 21, 2008, the Declaration of Kenneth W. Africano, Esq. (Doc. No. 34) ("Africano Declaration"), and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue (Doc. No. 35) ("Plaintiffs' Memorandum").  In further support of Defendant's motion, Defendant filed on March 27, 2008, New York Energy Savings Corp.'s Reply in Support of Its Motion to Transfer Venue (Doc. No. 39) ("Defendant's Reply").  Following oral argument, held on April 2, 2008 (Doc. No. 40), the undersigned reserved decision.

Based on the following, Defendant's motion is DENIED.

## DISCUSSION

Defendant seeks to transfer venue from the Buffalo Division of the Western District of New York to the Rochester Division of the same district because negative

---

[3] Defendants' Exhibits attached to Defendant's Original Memorandum were not attached to Defendant's Corrected Memorandum.  However, because Defendant's Corrected Memorandum amends only some minor typographical errors, and also refers to Defendant's Exhibits A through C, the court treats Defendant's Corrected Memorandum as if the same Defendant's Exhibits were attached thereto.

4

publicity within the Buffalo Division makes it "virtually impossible for U.S. Energy to obtain a fair trial in the Buffalo Division of the Western District." Defendant's Memorandum at 3-4. According to Defendant, local print and television media outlets in Buffalo have published stories about Plaintiffs' customers complaining of being "ripped-off" when savings on natural gas supplies promised by Defendant's representatives never materialized. Defendant's Memorandum at 2-3 (citing Defendant's Exh. A). The City of Hornell, New York recently, through its web-site, advised its residents to report any contact by U.S. Energy representatives and to refrain from engaging in any business with Defendant pending an investigation by New York's Attorney General. *Id*. at 3 (citing Defendant's Exh. B). Defendant maintains Plaintiffs have repeatedly made statements to its "vast customer base" in Buffalo, New York and its vicinity, numbering more than 700,000 customers, disparaging U.S. Energy, and advising customers that U.S. Energy's natural gas fixed-price program is a "scam" and requesting that any attempted solicitations by U.S. Energy be reported. *Id*. at 3. According to Defendant, because Plaintiffs have a 95% share of Buffalo's natural gas supply market, such statements would necessarily taint any jury pool from the Buffalo Division, making if "virtually impossible" for Defendant to obtain a fair trial. *Id*. at 3-4. Accordingly, Defendant seeks to change the venue for this action to the Rochester Division.[4] *Id*.

    Plaintiffs argue in opposition to Defendant's motion that Defendant has failed to establish that a venue transfer to the Rochester Division is in the best interests to this case because Defendants have not established, as required, both that venue would

---

[4] The courthouse for the Rochester Division is located in downtown Rochester, New York.

have been proper in the transferee division, and that such a transfer will serve the convenience of the parties and witnesses and promote the interest of justice. Plaintiff's Memorandum at 1-2. In further support of Defendant's motion, Defendant asserts that because Defendant seeks only a transfer of venue between two divisions within the same district, the considerations governing a transfer between districts do not apply. Defendant's Reply at 2. Defendant further contends that Plaintiffs have failed to distinguish the instant case from the cases Defendant cites in support of the transfer request. *Id*.

According to 28 U.S.C. § 1404 ("§ 1404"), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other <u>division</u> or district where it might have been brought." 28 U.S.C. § 1404(a) (underlining added). The determination whether to grant a motion to transfer under § 1404 is within the broad discretion of the district court. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); and *Filmline (Cross Country) Productions, Inc., v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). Section 1404(a) directs the court to conduct an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen*, 376 U.S. at 622.

The court must consider a variety of factors in determining whether the balance of conveniences and interests weighs in favor of a trial in the proposed transferee forum, including: (1) convenience of the parties; (2) convenience of the witnesses; (3) availability of process to compel the presence of unwilling witnesses; (4) access to sources of proof; (5) where the events at issue took place; (6) where the case can be

more expeditiously and inexpensively tried; (7) remoteness of the forum from the situs of the event; and (8) the forum court's need to rely on foreign law.  *Blanco v. Banco Industrial de Venezuela, S.A.*, 997 F.2d 974, 980 (2d Cir. 1993) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)) (the "*Gilbert* factors").  Here, because Defendant only seeks a transfer between divisions within the same district, there is no need to consider the Eighth *Gilbert* factor.  The plaintiff's choice of forum should also be considered on a motion to transfer venue, and the plaintiff's choice of form will be respected when the requested transfer would merely shift the inconvenience from one party to another.  *Carruthers v. Amtrak*, 1995 WL 378544, *2 (S.D.N.Y. June 26, 1995); *National Utility Service, Inc. v. Queens Group, Inc.*, 857 F.Supp. 237, 240 (E.D.N.Y. 1994) (citing *O'Brien v. Goldstar Technology, Inc.*, 812 F.Supp. 383, 386 (W.D.N.Y. 1993)); *Uddyback v. New Jersey Transit Rail Operations*, 629 F.Supp. 1173, 1174 (S.D.N.Y. 1986).

In the instant case, Defendant, as the movant, bears the burden of establishing the propriety of the transfer by demonstrating that trial in the Rochester Division would be substantially more convenient and better serve the interests of justice than would trial in the Buffalo Division.  *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979).  Unless the balance, by a clear and convincing showing, is strongly in favor of the defendant, the plaintiff's choice of forum should not be disturbed.  *Benitez v. Straley*, 2006 WL 5400078, * 18 (S.D.N.Y. Feb. 16, 2006) (citing *Morales v. Navieras de Puerto Rico*, 713 F.Supp. 711, 712 (S.D.N.Y. 1989)); *Uddyback*, 629 F.Supp. at 1174.

Here, Defendant's motion for a change of venue is not predicated on any

argument for convenience. Rather, as stated, Defendant asserts that a transfer to the Rochester Division would better serve the interests of justice because media reports within the Buffalo Division have tainted the potential jury pool given that National Fuel Distributors have more than 700,000 customers within the Buffalo Division, representing more than 95% of the relevant market. Defendant's Memorandum at 6-8. Defendant further maintains that transferring the case to the Rochester Division would not materially inconvenience the parties or any witnesses because Defendant seeks only a transfer to a different division within the same district, and Rochester is only 60 miles from Buffalo. Defendant's Memorandum at 5-6. Plaintiffs argue in opposition that consideration of the relevant factors strongly weighs in favor of the case remaining in the Buffalo Division given that the Buffalo Division is where Plaintiffs and most of the witnesses are located as well as the situs of most of the alleged events giving rise to the instant action, and that at least one of the media reports on which Defendant relies in support of transfer, specifically, the warning posted on Hornell's website, occurred within the Rochester Division, thus arguably raising an issue of potential juror bias similar to that raised by Defendant in support of its motion. Plaintiffs' Memorandum at 2-7. Here, consideration of the *Gilbert* factors establishes that six of the eight factors, including the First, Second, Fourth, Fifth, Sixth and Seventh, strongly weigh in favor of the case remaining in the Buffalo Division, and the remaining two factors do not militate in favor of either division.

     Defendant argues that the requested venue change would minimally inconvenience the parties and witnesses because Rochester is only 60 miles from Buffalo, both the Buffalo Division and the Rochester Division are located within the

Western District of New York, and the witnesses will remain within the court's subpoena power regardless of whether the case is venued in Buffalo or Rochester.  Defendant's Memorandum at 5-6.  It is, however, undisputed that the Buffalo Division is where Plaintiffs, most of the witnesses, and most sources of proof are located, as well as the situs of most of the alleged events giving rise to this action.

Major factors to be considered when evaluation a motion to transfer venue include the location of witnesses, physical evidence, the convenience of the parties and the "locus of operative facts."  *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 134 (S.D.N.Y. 1994) (citing cases).  Here, both Plaintiffs maintain principal places of business in the Buffalo suburb of Williamsville, New York, and the majority of the alleged operative facts, including the deceptive door-to-door sales and canvassing tactics in which Defendant's representatives allegedly engaged, occurred within the Buffalo Division, including in Buffalo and Cheektowaga.  Further, although Rochester is only 60 miles from Buffalo,[5] a transfer to the Rochester Division would required many of Plaintiffs' witnesses to incur additional travel time and expense.  As such, the First, Second, Fourth, Fifth, Sixth and Seventh factors weigh against the requested venue change.

Because both the Buffalo Division and the Rochester Division are located within the Western District of New York, a transfer from Buffalo to Rochester would neither affect the availability of process to compel the presence of unwilling witnesses, nor, as

---

[5] Plaintiffs maintain the distance between Buffalo and Rochester is actually 75 miles and that a transfer to the Rochester Division would require Plaintiffs' witnesses to make a three-hour round trip to testify at trial.  Plaintiffs' Memorandum at 3.

the merits turn on federal and New York law, involve any application of foreign law.  The Third and Eighth Factors, therefore, do not weigh in either party's favor.  Because six of the eight relevant factors militate strongly in favor of the case remaining in the Buffalo Division, Defendant's motion should be granted only if the requested transfer is necessary in the interests of justice.

In support of the motion, Defendant references several media reports and the City of Hornell website as establishing the extent to which such negative publicity has permeated any potential jury pool to be chosen from within the Buffalo Division. Defendant's Memorandum at 6-8, and Defendant's Exhs. A (depicting photocopies of news articles from various local news websites, including local television stations WIVB Channel 4 and WNLO Channel 23), and B (City of Hornell website containing message urging Hornell reisdents to "exercise caution" before committing to purchasing natural gas through Defendant).  Plaintiffs maintain that such alleged "negative pre-trial publicity" is "woefully inadequate" to support a transfer to the Rochester Division and, in any event, consideration of such a transfer is, at this time, speculative, and should await *voir dire* to determine whether the availability of fair and impartial jurors has, if fact, been demonstrably affected by such publicity.  Plaintiff's Memorandum at 4-5.  Plaintiffs further maintain that Defendant has failed to furnish a single affidavit in support of its arguments for a venue transfer on this ground.  *Id*. at 6.

Although most cases involving the assessment of the impact of pre-trial publicity are not civil actions but, rather, criminal cases and petitions seeking habeas relief, '[t]here is a constitutional right to a fair trial in the non-criminal context.'"  *Koch v. Koch Industries, Inc.*, 2 F.Supp.2d 1409, 1412 (D.Kan. 1998) (quoting *Latiolais v. Whitley*, 93

F.3d 205, 207 (5th Cir. 1996) (internal quotation marks omitted)).  The existence of even negative pre-trial publicity, however, will not render a trial constitutionally unfair.  *Murphy v. Florida*, 421 U.S. 794, 799 (1975).  Rather, the adverse effect of such publicity must be assessed on a case-by-case basis.  *Marshall v. United States*, 360 U.S. 310, 312 (1959).  Such negative pre-trial publicity may, for example, dissipate before trial.  *United States v. Gullion*, 575 F.2d 26, 30 (1st Cir. 1978).  The court may also negate the damaging impact from any such publicity through careful jury *voir dire*.  *Powers v. McGuigan*, 769 F.2d 72, 76 (2d Cir. 1985); *United States v. Halderman*, 559 F.2d 31, 41 (D.C. Cir. 1976), cert. denied, 431 U.S. 933 (1977).  Courts also have authority to issue a civil 'gag' order where the party protesting pretrial publicity demonstrates a "reasonable likelihood" that media attention or extrajudicial commentary will prejudice a fair trial.  *United States v. Tijerina*, 412 F.2d 661, 666 (10th Cir. 1969).  In the instant case, the record fails to establish that negative pre-trial publicity supports Defendant's motion to transfer.

With regard to Defendant's contention that at least two local television news programs have carried stories about customers allegedly complaining of being "ripped-off" by Defendant whose promises of natural gas savings never materialized, Defendant's Memorandum at 2-3, there is simply nothing in the record suggesting that such news coverage was widely viewed by potential jurors within the Buffalo Division.  Nor is there any reason to believe, at this time, that the media coverage of the story was so extensive as to command the attention of potential jurors as to impact such jurors' objectivity.  *See United States v. Halderman*, 559 F.2d 31, 41 (D.C.Cir. 1976) ("This may come as a surprise to lawyers and judges, but it is simply a fact of life that matters

which interest them may be less fascinating to the public generally."). Rather, the exhibits Defendant submits in support of this argument consist of two news articles appearing on the websites maintained for local television stations WIVB Channel 4 ("WIVB") and its affiliated station WNLO Channel 23 ("WNLO"). Defendant's Exh. A. Specifically, according to an article posted on December 4, 2007, on WIVB's website, a former National Fuel natural gas customer complained that after signing a contract to obtain natural gas from Defendant at lower prices than offered by Natural Fuel, the customer ended up paying more for natural gas, and that National Fuel "is so fed up with U.S. Energy Savings' tactics," that National Fuel has commenced legal action against Defendant in federal court. *Id*. According to identical news reports posted on January 18, 2008 on websites for both WIVB and WNLO, Defendant had "ripped-off" hundreds of New York natural gas customers who signed contracts presented by Defendant's door-to-door sales representatives promising lower heating bills. *Id*. The January 18, 2008 article does not mention National Fuel. The earlier article is now more than six months old, and the latter article is almost as dated. Significantly, as stated, Defendant does not submit any affidavit from anyone located within the Buffalo Division supporting Defendant's assertion that such articles so permeated the local news as to create any general bias against Defendant on the part of potential jurors that can be rectified only by transferring venue to the Rochester Division. Nor has Defendant submitted the results of any professional poll supporting Defendant's argument that the general public is both aware of the unethical business practices in which Plaintiffs maintain Defendant is engaged, and believes such assertions. In short, the two internet news articles Defendant submits fail to demonstrate that any

conceivable negative pretrial publicity was so extensive as to render any trial in the Buffalo Division, seeking a judgment against Defendant, constitutionally unfair.  *Murphy*, 421 U.S. at 799.

Insofar as Defendant relies on the City of Hornell's website message advising Hornell residents to "exercise caution" before committing to purchasing natural gas through Defendant, Defendant's Exh. B, the court takes judicial notice that Hornell is a municipality located within the Rochester Division.  As such, any warning appearing on the website would more likely affect potential jurors chosen from the Rochester Division, rather than the Buffalo Division.

The record thus fails to establish that negative pre-trial publicity so permeates the Buffalo Division as to render it impossible to seat unbiased jurors chosen from within the Buffalo Division.  As such, Defendant's argument that a transfer of venue from the Buffalo Division to the Rochester Division is necessary in the interest of justice is without merit.  Should circumstances change, such that as the case progresses closer to trial an actual potential for jury taint warranting transfer is demonstrated, Defendant may again seek relief based on such developments.

**CONCLUSION**

Based on the foregoing, Defendant's motion (Doc. No. 21) is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	June 11, 2008
	Buffalo, New York